# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Petters Company, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Stayhealthy, Inc., <br> AmerisourceBergen Corporation, <br> AmerisourceBergen Drug Corporation, <br> AmerisourceBergen Services Corporation, and <br> Bergen Brunswig Drug Company, <br><br> Defendants. | Court File No. 03-3210 (JRT/FLN) <br><br><br><br> **FIRST AMENDED COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

For its First Amended Complaint against Stayhealthy, Inc., AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, AmerisourceBergen Services Corporation, and Bergen Brunswig Drug Company, Plaintiff Petters Company, Inc., states and alleges as follows:

## THE PARTIES

1.    Petters Company, Inc. ("Petters Company") is a Minnesota corporation engaged in the business of wholesale sales and distribution.

2.    Upon information and belief, Stayhealthy, Inc. ("Stayhealthy") is a Delaware corporation with its principal place of business located at 222 East Huntington Drive, Monrovia, California 91016.  Stayhealthy markets and sells health-related products to drug stores and related businesses, and to individuals throughout the United States.  Stayhealthy uses the channels of interstate commerce to market and sell its products.

3.      Upon information and belief, AmerisourceBergen Corporation is a Delaware corporation with its principal place of business located at 1300 Morris Drive, Suite 100, Chesterbrook, Pennsylvania 19087.  Upon information and belief, AmerisourceBergen Corporation was formed as a result of a merger between Bergen Brunswig Drug Company and Amerisource Corporation and, at all relevant times, acted through its affiliates, AmerisourceBergen Drug Corporation and AmerisourceBergen Services Corporation, which are Delaware corporations.

4.      Upon information and belief, Bergen Brunswig Drug Company was a California corporation with its principal place of business located at 4000 Metropolitan Drive, Orange, California 92868.  Bergen Brunswig Drug Company was engaged in the wholesale of pharmaceutical products and other related healthcare products.  Upon information and belief, Bergen Brunswig Drug Company did business throughout the United States, including in Minnesota, and used the channels of interstate commerce to sell and distribute its products.

5.      AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation and AmerisourceBergen Services Corporation and Bergen Brunswig Drug Company shall be collectively referred to herein as "ABC" except when necessary to describe actions taken by the individual companies, whereupon they will be identified by their full corporate name. Following the merger, ABC has engaged in the wholesale of pharmaceutical products and other related healthcare products.  ABC does business throughout the United States, including in Minnesota, and uses the channels of interstate commerce to sell and distribute its products.

## FACTUAL BACKGROUND

### I. LOAN ONE

#### A. ABC Ordered Goods From Stayhealthy

6.      On or about March 16, 2002, ABC issued to Stayhealthy a Purchaser Order for $2,007,000 of products ("First Purchase Order").  A true and correct copy of the March 2002 Purchase Order is attached as Exhibit A.

#### B. Stayhealthy Borrowed Money From Petters Company

7.      On or about April 23, 2002, Stayhealthy executed a Promissory Note, dated April 23, 2002, in favor of Petters Company ("Note One"), pursuant to which Petters Company loaned Stayhealthy $1,680,000 ("Loan One").  A true and correct copy of Note One is attached as Exhibit B.

8.      Pursuant to Note One, Stayhealthy promised to pay Petters Company $1,906,650, consisting of principal and interest, on July 23, 2002.

9.      Paragraph 10 of Note One provides that Stayhealthy is obligated to pay Petters Company's expenses, including attorneys' fees, incurred in enforcing its rights under Note One.

10.      Paragraph 14 of Note One provides that any action with respect to Note One is governed by Minnesota law.

11.      Paragraph 14 of Note One provides that Stayhealthy consents to the jurisdiction of the courts of the State of Minnesota with respect to enforcement of Note One.

## C. Stayhealthy Granted Petters Company A Security Interest to Secure Payment of Note One

12.    On or about April 23, 2002, Stayhealthy and Petters Company entered into a Security Agreement, dated April 23, 2002 ("Security Agreement One").  A true and correct copy of Security Agreement One is attached as Exhibit C.

13.    Pursuant to Security Agreement One, Stayhealthy granted Petters Company a security interest in the following:

    (a)    The inventory of Stayhealthy referenced in the March 2002 Purchase Order;

    (b)    All accounts, documents, chattel paper, contract rights, and general intangibles in connection with the inventory of Stayhealthy referenced in Order One; and

    (c)    All proceeds, substitutions, and replacements of the foregoing.

(the "Loan One Collateral").

14.    Paragraph 7 of Security Agreement One provides, among other things, that if Stayhealthy fails to make any payment on Note One when due, Stayhealthy is in default under the Security Agreement.

15.    Paragraph 8 of the Security Agreement One provides that upon a default of the Security Agreement by Stayhealthy, Petters Company may, among other things, foreclose upon and sell the Loan One Collateral pursuant to applicable law and apply the proceeds to the amounts due pursuant to Note One and Security Agreement One.

16.    Paragraph 10(e) of Security Agreement One provides that Stayhealthy is obligated to pay Petters Company's expenses, including attorneys' fees, incurred in enforcing its rights under Security Agreement One.

17.    Paragraph 10(f) of Security Agreement One provides that it is governed by Minnesota law.

18.    Paragraph 10(g) of Security Agreement One provides that Stayhealthy consents to the jurisdiction of the courts of the State of Minnesota with respect to enforcement of Security Agreement One.

### D. Stayhealthy Assigned Its Interest In The First Purchase Order to Petters Company

19.    On or about April 23, 2002, Stayhealthy and Petters Company entered into an Assignment of Purchase Order and Proceeds ("Assignment One").  A true and correct copy of Assignment One is attached as Exhibit D.

20.    Pursuant to Assignment One, Stayhealthy assigned to Petters Company all of its right, title, and interest in the First Purchase Order.

### E. ABC Failed to Perform Under the First Purchase Order

21.    Pursuant to the First Purchase Order, Stayhealthy delivered goods with a purchase price of $2,007,000 to the location directed by ABC.

22.    As of November 15, 2003,  Petters has received only $292,400.80 for the goods delivered pursuant to the March 2002 Purchase Order.

23.    Despite demand, ABC has failed to pay the $1,714,599.20 balance due under the First Purchase Order.

### F. Stayhealthy Defaulted Under Note One

24.    Stayhealthy defaulted under Note One by failing to pay Petters Company the $1,906,650 that was due on July 23, 2002.

25.    Despite demand, Stayhealthy has failed to pay the $1,906,650 balance due on Loan One, plus interest.

## II. LOAN TWO

### A. ABC Ordered Goods from Stayhealthy

26.    On or about August 13, 2002, ABC issued to Stayhealthy a Purchaser Order for $4,535,772 of products ("the Second Purchase Order"). A true and correct copy of the Second Purchase Order for the goods is attached as Exhibit E.

### B. Stayhealthy Borrowed Money from Petters Company

27.    On or about August 20, 2002, Stayhealthy executed a Promissory Note, dated August 20, 2002, in favor of Petters Company ("Note Two"), pursuant to which Petters Company loaned Stayhealthy $3,200,000 ("Loan Two"). A true and correct copy of Note Two is attached as Exhibit F.

28.    Pursuant to Note Two, Stayhealthy promised to pay Petters Company $4,267,091, consisting of principal and interest, on November 20, 2002.

29.    Paragraph 10 of Note Two provides that Stayhealthy is obligated to pay Petters Company's expenses, including attorneys' fees, incurred in enforcing its rights under Note Two.

30.    Paragraph 14 of Note Two provides that any action with respect to Note Two is governed by Minnesota law.

31.    Paragraph 14 of Note Two provides that Stayhealthy consents to personal jurisdiction in the courts of the State of Minnesota with respect to enforcement of Note Two.

### C. Stayhealthy Granted Petters Company A Security Interest to Secure Payment of Note Two

32.    On or about August 20, 2002, Stayhealthy and Petters Company entered into a Security Agreement, dated August 20, 2002 ("Security Agreement Two").  A true and correct copy of Security Agreement Two is attached as Exhibit G.

33.    Pursuant to Security Agreement Two, Stayhealthy granted Petters Company a security interest in the following:

(a)    The inventory of Stayhealthy referenced in the August 2002 Purchase Order;

(b)    All accounts, documents, chattel paper, contract rights, and general intangibles in connection with the inventory of Stayhealthy referenced in Order Two; and

(c)    All proceeds, substitutions, and replacements of the foregoing.

(the "Loan Two Collateral").

34.    Paragraph 7 of Security Agreement Two provides, among other things, that if Stayhealthy fails to make any payment on Note Two when due, Stayhealthy is in default under the Security Agreement.

35.    Paragraph 8 of Security Agreement Two provides that upon a default, Petters Company may, among other things, foreclose upon and sell the Loan Two Collateral pursuant to applicable law and apply the proceeds to the amounts due pursuant to Note Two and Security Agreement Two.

36.    Paragraph 10(e) of Security Agreement Two provides that Stayhealthy is obligated to pay Petters Company's expenses, including attorneys' fees, incurred in enforcing its rights under Security Agreement Two.

37.    Paragraph 10(f) of Security Agreement Two provides that it is governed by Minnesota law.

38.    Paragraph 10(g) of Security Agreement Two provides that Stayhealthy consents to the jurisdiction of the courts of the State of Minnesota with respect to enforcement of Security Agreement Two.

### D. Stayhealthy Assigned Its Interest In The Second Purchase Order to Petters Company

39.    On or about August 20, 2002, Stayhealthy and Petters Company entered into an Assignment of Purchase Order and Proceeds ("Assignment Two"). A true and correct copy of Assignment Two is attached as Exhibit H.

40.    Pursuant to Assignment Two, Stayhealthy assigned to Petters Company all of its right, title, and interest in the Second Purchase Order.

### E. ABC Failed to Perform Under the Second Purchase Order

41.    Pursuant to the August 2002 Purchase Order, Stayhealthy delivered goods with a purchase price of $4,535,772 to the location directed by ABC.

42.    As of the date hereof, ABC has not paid any amounts for the goods delivered pursuant to the Second Purchase Order.

43.    Despite demand, ABC has failed to pay the $4,535,772 balance due under the August 2002 Purchase Order.

### F. Stayhealthy Defaulted Under Note Two

44.    Stayhealthy defaulted under Note Two by failing to pay Petters Company the $4,267,091 that was due on November 20, 2002.

45.    Despite demand, Stayhealthy has failed to pay the $4,267,091 balance due on Loan Two, plus interest.

### III. LOAN THREE

#### A. Petters Company Made Additional Secured Loans to Stayhealthy

46.    During the period March 24, 2003 through October 7, 2003, Petters Company loaned Stayhealthy $936,000 for general operating purposes ("Loan Three"). Such amounts were to be re-paid upon demand.

47.    To secure repayment of Loan Three, as well as Loan One and Loan Two, and all other amounts loaned at any time by Petters Company to Stayhealthy, Stayhealthy and Petters Company entered into a Security Agreement, dated June 20, 2003 ("Security Agreement Three"). A true and correct copy of Security Agreement Two is attached as Exhibit I.

48.    Pursuant to Security Agreement Three, Stayhealthy granted Petters Company a security interest in the following:

(a)    All inventory of Stayhealthy, whether then owned or later acquired;

(b)    All equipment of Stayhealthy, whether then owned or later acquired;

(c)    All accounts, contract rights and rights to payment then owned or later acquired by Stayhealthy;

(d)    All instruments, chattel paper and letters of credit then owned or later acquired by Stayhealthy;

(e)    All rights to all deposit and investment accounts owned by Stayhealthy;

(f)    All generable intangibles, including patents, applications for patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, software, all license of any of the foregoing, whether then owned or later acquired;

(g)  All chattel paper owned by Stayhealthy;

(h)  All of Stayhealthy's rights in promissory notes, documents, embedded software, letter of credit rights and supporting obligations, whether then owned or later acquired; and

(i)  All of Stayhealthy's commercial tort claims against AmeriSource Bergen arising out of misrepresentations to and defamation of Stayhealthy.

(the "Loan Three Collateral").

49.  Paragraph 4 of Security Agreement Three provides, among other things, that if Stayhealthy fails to make any payment when due on any debt, liability or obligation to Petters Company, whether then existing or later created or incurred, Stayhealthy is in default under Security Agreement Three.

50.  Paragraph 5 of the Security Agreement Three provides that upon a default of the Security Agreement by Stayhealthy, Petters Company may, among other things, declare all obligations of Stayhealthy immediately due and payable and foreclose upon and sell the Loan Three Collateral pursuant to applicable law and apply the proceeds to the amounts due to Petters by Stayhealthy.

51.  Paragraph 8.6 of Security Agreement Three provides that it is governed by Minnesota law.

52.  Paragraph 8.6 of Security Agreement Three further provides that any dispute arising out of or relating to Security Agreement Three shall be resolved by the state or federal courts sitting in Hennepin County.

### Stayhealthy Defaulted Under Loan Three

53.  Stayhealthy has informed Petters Company that it cannot repay Loan Three and has thereby defaulted under Loan Three.

## IV. LOAN FOUR AND LOAN FIVE

54.     On August 18, 2003, Stayhealthy executed a Promissory Note, dated August 18, 2003, in favor of Petters Company ("Note Four"), pursuant to which Petters Company loaned Stayhealthy $224,200.00 ("Loan Four"). A true and correct copy of Note Four is attached as Exhibit J.

55.     Pursuant to Note Four, Stayhealthy promised to pay Petters Company $224,200.00 on September 17, 2003.

56.     Pursuant to Note Four, if any part of Note Four remained unpaid on September 17, 2003, interest accrues at .06667% per day.

57.     Note Four provides that if Stayhealthy fails to make payment on Note Four when due, Stayhealthy is in default under the Note.

58.     Stayhealthy defaulted under Loan Four by failing to pay Petters Company the $224,200 that was due on September 17, 2003.

59.     On September 10, 2003, Stayhealthy executed a Promissory Note, dated September 10, 2003, in favor of Petters Company ("Note Five"), pursuant to which Petters Company loaned Stayhealthy $258,519.00 ("Loan Five"). A true and correct copy of Note Five is attached as Exhibit K.

60.     Pursuant to Note Five, Stayhealthy promised to pay Petters Company $258,519.00, plus interest, on October 10, 2003.

61.     Pursuant to Note Five, interest accrues on Note Five at the rate of at .06667% per day.

11

62.    Note Five provides that if Stayhealthy fails to make payment on Note Five when due, Stayhealthy is in default under the Note.

63.    Stayhealthy defaulted under Loan Five by failing to pay Petters Company the $258,519, plus interest, that was due on October 10, 2003.

## COUNTS

### I. BREACH OF CONTRACT – LOAN ONE
(Against Stayhealthy)

64.    Pursuant to Note One, Stayhealthy promised to pay Petters Company $1,906,650 on July 23, 2002.

65.    Stayhealthy breached the terms of Note One by failing to pay in full amounts due and payable thereunder.

66.    Stayhealthy's breach of Note One has caused Petters Company damages in the amount of $2,510,094.35, including unpaid principal and accrued interest through November 15, 2003, plus accruing interest pursuant to the terms of Note One from November 15, 2003, collection costs, and attorneys' fees.

### II. BREACH OF SECURITY AGREEMENT ONE / FORECLOSURE
(Against Stayhealthy)

67.    Pursuant to Security Agreement One, Stayhealthy secured its payment obligations under Note One by granting Petters Company a security interest in the Loan One Collateral.

68.    Stayhealthy breached Note One and Security Agreement One by failing to pay amounts due to Petters Company.

69.    Petters Company is entitled to possession of the Loan One Collateral, to sell such collateral pursuant to Security Agreement One and applicable law, and to apply the proceeds to amounts owed by Stayhealthy.

### III.  BREACH OF CONTRACT – LOAN TWO
### (Against Stayhealthy)

70.     Pursuant to Note Two, Stayhealthy promised to pay Petters Company $4,267,091 on November 20, 2002.

71.     Stayhealthy breached the terms of Note Two by failing to pay amounts due and payable thereunder.

72.     Stayhealthy's breach of Note Two has caused Petters Company damages in the amount of $4,854,296.62, including unpaid principal and accrued interest through November 15, 2003, plus accruing interest pursuant to the terms of Note Two from November 15, 2003, collection costs, and attorneys' fees.

### IV.  BREACH OF SECURITY AGREEMENT TWO / FORECLOSURE
### (Against Stayhealthy)

73.     Pursuant to Security Agreement Two, Stayhealthy secured its payment obligations under Note Two by granting Petters Company a security interest in the Loan Two Collateral.

74.     Stayhealthy breached Note Two and Security Agreement Two by failing to pay amounts due to Petters Company.

75.     As a result, Petters Company is entitled to possession of the Loan Two Collateral, to sell such collateral pursuant to Security Agreement Two and applicable law, and to apply the proceeds to amounts owed by Stayhealthy.

### V.  BREACH OF CONTRACT – LOAN THREE
### (Against Stayhealthy)

76.     Stayhealthy breached the terms of Loan Three by failing to pay in full the amounts due and payable thereunder, and by informing Petters Company that Stayhealthy cannot repay Loan Three.

13

77.    Stayhealthy's breach of Loan Three has caused Petters Company damages in the amount of $924,578.95, including unpaid principal and accrued interest through November 15, 2003, plus accruing interest pursuant to the terms of Loan Three from November 15, 2003.

## VI. BREACH OF CONTRACT – LOAN FOUR AND LOAN FIVE
### (Against Stayhealthy)

78.    Pursuant to Loan Four, Stayhealthy promised to pay Petters $224,200 on September 17, 2003.

79.    Stayhealthy breached the terms of Loan Four by failing to pay in full the amounts due and payable thereunder.

80.    Pursuant to Loan Five, Stayhealthy promised to pay Petters $258,519 plus interest on October 10, 2003.

81.    Stayhealthy breached the terms of Loan Five by failing to pay in full the amounts due and payable thereunder.

82.    Stayhealthy's breach of Loan Four and Loan Five has caused Petters Company damages in the amount of $402,976.50, including unpaid principal and accrued interest through November 15, 2003, plus accruing interest pursuant to the terms of Loan Four and Loan Five from November 15, 2003, collection costs, and attorneys' fees.

## VII. BREACH OF SECURITY AGREEMENT THREE / FORECLOSURE
### (Against Stayhealthy)

83.    Pursuant to Security Agreement Three, Stayhealthy secured all of its payment obligations by granting Petters Company a security interest in the Loan Three Collateral, including (a) all inventory of Stayhealthy, whether then owned or later acquired; (b) all equipment of Stayhealthy, whether then owned or later acquired; (c) all accounts, contract rights and rights to payment then owned or later acquired by Stayhealthy; (d) all instruments, chattel

14

paper and letters of credit then owned or later acquired by Stayhealthy; (e) all rights to all deposit and investment accounts owned by Stayhealthy; (f) all generable intangibles, including patents, applications for patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, software, all license of any of the foregoing, whether then owned or later acquired; (g) all chattel paper owned by Stayhealthy; (h) all of Stayhealthy's rights in promissory notes, documents, embedded software, letter of credit rights and supporting obligations, whether then owned or later acquired; and (i) all of Stayhealthy's commercial tort claims against AmeriSource Bergen arising out of misrepresentations to and defamation of Stayhealthy.

84.    Stayhealthy breached Security Agreement Three by failing to pay amounts due to Petters Company.

85.    As a result, Petters Company is entitled to possession of the Loan Three Collateral, to sell such collateral pursuant to Security Agreement Three and applicable law, and to apply the proceeds to amounts owed by Stayhealthy.

## VIII.  BREACH OF CONTRACT – FIRST PURCHASE ORDER
### (Against ABC)

86.    Bergen Brunswig Drug Company ordered goods with a purchase price of $2,007,000 from Stayhealthy pursuant to the First Purchase Order.

87.    ABC assumed Bergen Brunswig Drug Company's obligations under the First Purchase Order.

88.    Stayhealthy assigned its right, title, and interest in the First Purchase Order to Petters Company.

89.    ABC breached the First Purchase Order by, among other things, failing to pay amounts due for goods it has received pursuant to the First Purchase Order.

90.    As a result, Petters Company has been damaged in the amount $1,714,599.20, plus incidental damages.

## IX.  BREACH OF CONTRACT – SECOND PURCHASE ORDER
### (Against ABC)

91.    ABC ordered goods with a purchase price of $4,535,772 from Stayhealthy pursuant to the Second Purchase Order.

92.    Stayhealthy assigned its right, title, and interest in the Second Purchase Order to Petters Company.

93.    ABC breached the August 2002 Purchase Order by, among other things, failing to pay amounts due for goods it has received pursuant to the Second Purchase Order.

94.    As a result, Petters Company has been damaged in the amount of $4,535,772, plus incidental damages.

## X.  INTENTIONAL MISREPRESENTATION
### (Against ABC and Stayhealthy)

95.    ABC, by and through its employees and agents, including but not limited to, Charles Prieve, Gary Yoshino, Daniel Ramirez, Fred Stern, and Doug Batezel, offered to acquire the goods described on the First Purchase Order and the Second Purchase Order from Stayhealthy on a consignment basis.

96.    Stayhealthy, by and through its employees and agents, including but not limited to, John Collins, agreed to deliver to ABC the goods described on the First Purchase Order and the Second Purchase Order on a consignment basis, pursuant to which ABC would have no purchase or payment obligation until the goods were sold to end-users.

97.   At the time the purchase orders were issued (on March 16, 2002, and August 13, 2002), Stayhealthy intended to represent to Petters that the Purchase Orders were actual non-consignment sales and that ABC owed to Stayhealthy the amounts stated on the Purchase Orders to obtain financing from Petters. Stayhealthy, by and through John Collins, made such representations to Petters, and Petters loaned money to Stayhealthy based on such representations.

98.   At the time the purchase orders were issued (March 2002 and August 2002), representatives of ABC (including, but not limited to, Gary Yoshino, Chuck Prieve, Daniel Ramirez, Fred Stern, and Doug Batezel) knew that Stayhealthy and John Collins intended to represent to Petters that the Purchase Orders were actual non-consignment sales and that ABC owed to Stayhealthy the amounts stated on the Purchase Orders to obtain financing from Petters.

99.   ABC (though various individuals, including, but not limited to the individuals referenced in paragraph 98) prepared and delivered to Stayhealthy the First Purchase Order (on March 18, 2002) and the Second Purchase Order (on August 13, 2002) without any designation, marking or other indication that the purchase orders did not represent actual purchase obligations, even though the purchase orders were subject to consignment terms. ABC prepared and delivered the Purchase Orders to assist Stayhealthy in obtaining loans.

100.   The First Purchase Order and the Second Purchase Order were, on their face, false statements of fact insofar as they provide that ABC is obligated to purchase and pay for $6,542,722 of goods from Stayhealthy when in fact, ABC acquired the goods on a consignment basis and thus, did not have any obligation to purchase or pay for the goods until they were sold to end-users.

101.    The false statements were material because had Petters Company known that ABC was not actually obligated to purchase the goods, Petters Company would not have loaned money to Stayhealthy.

102.    The false statements pertained to past or present facts susceptible of both Stayhealthy and ABC's knowledge because both Stayhealthy and ABC knew that they had agreed to a consignment transaction whereby Stayhealthy would deliver goods to ABC, who would then distribute the goods to its network of pharmacies and incur purchase and payment obligations only when a pharmacy actually sold the goods to end-users.

103.    Stayhealthy and ABC made the false statements with the intent to induce Petters Company to lend money to Stayhealthy.

104.    Petters Company actually and reasonably relied on the false statements and in doing so, loaned money to Stayhealthy.

105.    As a proximate result of Petters Company's reliance on the false statements, Petters Company has been damaged in an amount in excess of $7,000,000.

### XI. VIOLATION OF 18 U.S.C. SECTION 1962(c)
### (CIVIL RICO)
### (Against ABC and Stayhealthy)

106.    At all times relevant to this cause of action, Stayhealthy and ABC were enterprises operating in interstate commerce.

107.    From 1999 through 2003, Stayhealthy and ABC worked together to manufacture, distribute and market the goods described in the First Purchase Order and the Second Purchase Order. In addition, Stayhealthy and ABC engaged in other transactions, including the development and marketing of a kiosk program. Stayhealthy and ABC had a common purpose separate and distinct from their racketeering activity and a continuity of structure.

101.    The false statements were material because had Petters Company known that ABC was not actually obligated to purchase the goods, Petters Company would not have loaned money to Stayhealthy.

102.    The false statements pertained to past or present facts susceptible of both Stayhealthy and ABC's knowledge because both Stayhealthy and ABC knew that they had agreed to a consignment transaction whereby Stayhealthy would deliver goods to ABC, who would then distribute the goods to its network of pharmacies and incur purchase and payment obligations only when a pharmacy actually sold the goods to end-users.

103.    Stayhealthy and ABC made the false statements with the intent to induce Petters Company to lend money to Stayhealthy.

104.    Petters Company actually and reasonably relied on the false statements and in doing so, loaned money to Stayhealthy.

105.    As a proximate result of Petters Company's reliance on the false statements, Petters Company has been damaged in an amount in excess of $7,000,000.

## XI. VIOLATION OF 18 U.S.C. SECTION 1962(c)
### (CIVIL RICO)
### (Against ABC and Stayhealthy)

106.    At all times relevant to this cause of action, Stayhealthy and BAC were enterprises operating in interstate commerce.

107.    From 1999 through 2003, Stayhealthy and ABC worked together to manufacture, distribute and market the goods described in the First Purchase Order and the Second Purchase Order.  In addition, Stayhealthy and ABC engaged in other transactions including the development and marketing of a kiosk program.  Stayhealthy and ABC had a common purpose separate and distinct from their racketeering activity and a continuity of structure.

18

108.    ABC participated in the enterprise's affairs by preparing the purchase orders, "responding" to inquiries from Stayhealthy's financiers, distributing Stayhealthy's products to ABC's network of pharmacies and others and collecting fees for sold product.

109.    Stayhealthy participated in the enterprise by manufacturing and providing product to ABC for distribution, using ABC's purchase orders to obtain financing and providing information to its financiers.

110.    Both parties contributed to the development of a kiosk program by attending meetings, ordering renderings and promoting the kiosk at various events.

111.    Stayhealthy conducted and participated in the affairs of ABC and associated itself with ABC through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Beginning sometime in 2001, Stayhealthy and ABC (or its predecessor Bergen Brunswig Drug Company) combined and joined together, forming an enterprise affecting interstate commerce and associating themselves with such enterprise for the common purpose of perpetrating schemes and artifices to defraud Petters and other financing companies and to take money by means of false and fraudulent pretenses, representations and promises through a pattern of racketeering in violation of 18 U.S.C. § 1962(c). In particular, Stayhealthy and ABC defrauded Petters and KBK Financial (and attempted to defraud Riveria Finance) out of millions of dollars by stating, explicitly and implicitly, that the terms of their transaction were an outright sale of product when, in fact, the transaction was a consignment that involved no purchase or payment obligation of ABC unless and until the Stayhealthy products were actually sold to end-users.

112.    When Petters questioned the terms of the transaction between Stayhealthy and ABC, Stayhealthy, by and through John Collins, specifically told Petters that the transaction was a standard sale of product. To "confirm" Stayhealthy's misrepresentation, ABC, by and through

Prieve, Yoshino, Ramirez, and Batezel, caused payment to be made to Petters to create the appearance that ABC was actually purchasing products when, in fact, the payments were not due from ABC to Stayhealthy.

113.    For the purpose of executing this scheme and artifice to defraud Petters and others, including KBK Financial and Riveria Finance, ABC and Stayhealthy did on numerous occasions send, or caused to be sent, emails and facsimiles over the telecommunications wires, for delivery via such wires, and did receive emails and facsimiles sent over the telecommunications wires, all in violation of 18 U.S.C. § 1341.

114.    Specifically, Stayhealthy and ABC sent, or caused to be sent, over the telecommunications wires, emails, and facsimiles containing false statements about the nature of their transaction, all of which were used to further defendants' fraudulent scheme of misrepresenting the nature of their transaction to secure financing, including, but not limited to:

   (a)    Transmission of the First Purchase Order by facsimile to Petters on March 18, 2002.

   (b)    Transmission of the Second Purchase Order by e-mail to Petters on August 13, 2002.

   (c)    Transmission of e-mails on March 13, 2002; July 24, 2002; July 26, 2002; July 30, 2002; November 13, 2002; November 19, 2002; and December 3, 2002.

In addition, ABC and Stayhealthy obtained funds from Petters via wire transfer to Stayhealthy's bank account.

115.    It was reasonably foreseeable that the wires and mails would be used to transmit the fraudulent purchase orders and the false statements of fact concerning the terms of the purchase orders, and to obtain the loans from Petters, KBK Financial and Riveria Finance.

116.    ABC and Stayhealthy's racketeering activity had a pattern insofar as ABC and Stayhealthy created and presented purchase orders to obtain financing for Stayhealthy to KBK in 2001, Petters Company on two instances in 2002, and Riviera Finance in 2003. In each instance, the purchase orders were used to obtain financing, even though the purchase orders did not represent actual obligations by ABC to purchase goods and were subject to undisclosed consignment terms.

117.    Stayhealthy and ABC fraudulently concealed their scheme to defraud Petters and KBK Financial by specifically telling Petters and KBK Financial that the transactions were true sales and by causing payment to be made to Petters and KBK Financial to create an appearance that payments was being made for goods, all the time knowing that the transaction was actually a consignment and that the payments being made to Petters were not due from ABC to Stayhealthy.

118.    In reliance upon the false and fraudulent representations made by Stayhealthy and ABC to Petters, Petters loaned Stayhealthy more than $6,218,976.50 from April 2002 to the present time.

119.    ABC and Stayhealthy's participation in a pattern of racketeering in connection with their respective businesses, which are engaged in interstate commerce, constitutes a violation of 18 U.S.C. § 1962(c).

120.    As a proximate result of ABC and Stayhealthy's racketeering activity, Petters has been damaged in the amount in excess of $7,000,000.

## XII. CIVIL RICO CONSPIRACY
**(Against ABC and Stayhealthy)**

121.    Beginning sometime in 2001 and continuing to the present time, Stayhealthy and

ABC willfully and unlawfully conspired, combined and agreed, together with each other, to

conduct and participate in the affairs of the enterprise described above through a pattern of

racketeering activity in violation of 18 U.S.C. § 1962(d).   Specifically, Stayhealthy and ABC

each knowingly, willfully and unlawfully agreed to commit and did commit two or more acts in

violation of 18 U.S.C. § 1341, as set forth more fully herein.

### Object and Means of the Conspiracy

122.    It was the object of the aforementioned conspiracy that defendants would and did

defraud or attempt to defraud Petters and other financing companies (KBK Financial and Riveria

Finance) to obtain money from Petters and other finance companies by means of false and

fraudulent pretenses, representations and promises.

123.    In furtherance of the aforementioned conspiracy, the following manner and means

were accomplished:

      (a)    Defendants did agree, together and with each other, that they would
prepare and distribute purchase orders to Petters and others, which
purported to represent a true sale, in order to obtain financing from
Petters and others, when in fact Stayhealthy and ABC knew that
the terms of their transaction were actually a consignment,
pursuant to which ABC had no payment obligation unless and until
goods were sold to the end-users.

      (b)    When Petters questioned the terms of the transaction, Defendants
did agree, together and with each other, to make representations to
Petters that would cause Petters to believe that the transaction was
a true sale and to effectuate such agreement, Defendants directly
misrepresented the terms of their agreement to Petters.

      (c)    In an attempt to conceal their fraudulent scheme, Defendants did
agree, together and with each other, that they would cause partial

payment to be made to Petters to create the appearance that ABC was paying for goods, when in fact the payments pertained to other administrative charges, not the sale of goods.

### Overt Acts

124.    To execute, accomplish and carry out the aforementioned conspiracy, Stayhealthy and ABC performed the following over acts:

(a)    Stayhealthy and ABC prepared and distributed purchase orders to Petters and other finance companies which purported to represent a true sale of products by Stayhealthy to ABC.

(b)    Stayhealthy and ABC transmitted to Petters and other finance companies, by U.S. Mail, and by email and facsimile via telecommunications wires, the fraudulent purchase orders and other false information in an attempt to obtain financing.

(c)    Stayhealthy and ABC misrepresented the terms of their transaction during telephone conversations, transmitted via telecommunications wires, with Petters and other finance companies.

(d)    To conceal their fraudulent scheme, Stayhealthy and ABC caused payment to be sent to Petters and other finance companies, by U.S. Mail, to create the appearance that ABC was paying for products when in fact the payments pertained to administrative charges.

125.    As a proximate result of the aforementioned conspiracy, Petters has been damaged in the amount in excess of $7,000,000

### XIII.  CIVIL CONSPIRACY
### (Against ABC and Stayhealthy)

126.    Beginning sometime in 2001 and continuing to the present time, Stayhealthy and ABC willfully and unlawfully conspired, combined and agreed with each other to commit certain tortious acts.  Specifically, Stayhealthy and ABC each knowingly, willfully and unlawfully agreed to make and did make fraudulent misrepresentations concerning the nature of their transaction.

23

## Object and Means of the Conspiracy

127.    It was the object of the aforementioned conspiracy that Defendants would and did defraud Petters and other finance companies to obtain money from Petters and other finance companies by means of false and fraudulent pretenses, representations and promises.

128.    In furtherance of the aforementioned conspiracy, the following manner and means were accomplished:

(a)    Defendants did agree, together and with each other, that they would prepare and distribute purchase orders to Petters and others, which purported to represent a true sale, to obtain financing from Petters and others, when in fact Stayhealthy and ABC knew that the terms of their transaction were actually a consignment, pursuant to which ABC had no payment obligation unless and until goods were sold to the end-users.

(b)    When Petters questioned the terms of the transaction, Defendants did agree, together and with each other, to make representations to Petters that would cause Petters to believe that the transaction was a true sale and to effectuate such agreement, Defendants directly misrepresented the terms of their agreement to Petters.

(c)    In an attempt to conceal their fraudulent scheme, Defendants did agree, together and with each other, that they would cause partial payment to be made to Petters to create the appearance that ABC was paying for goods, when in fact the payments pertained to other administrative charges, not the sale of goods.

## Overt Acts

129.    To execute, accomplish and carry out the aforementioned conspiracy, Stayhealthy and ABC performed the following over acts:

(a)    Stayhealthy and ABC prepared and distributed purchase orders to Petters and other finance companies which purported to represent a true sale of products by Stayhealthy to ABC.

(b)    Stayhealthy and ABC transmitted to Petters and other finance companies, by U.S. Mail, and by email and facsimile via

24

telecommunications wires, the fraudulent purchase orders and other false information in an attempt to obtain financing.

(c)     Stayhealthy and ABC verbally misrepresented the terms of their transaction during telephone conversations, transmitted via telecommunications wires, with Petters and other finance companies.

(d)     To conceal their fraudulent scheme, Stayhealthy and ABC caused payment to be sent to Petters and other finance companies, by U.S. Mail, to create the appearance that ABC was paying for products when in fact the payments pertained to administrative charges.

130.    As a proximate result of the aforementioned conspiracy, Petters has been damaged in the amount in excess of $7,000,000.

### XIV. PUNITIVE DAMAGES
#### (Against ABC and Stayhealthy)

131.    ABC and Stayhealthy created purchase orders that misrepresented the terms of the transaction between ABC and Stayhealthy and/or otherwise failed to fully and accurately disclose the terms of the transaction.

132.    ABC and Stayhealthy knew or should have known that Stayhealthy intended to use the purchase orders to obtain financing.

133.    ABC and Stayhealthy knew or should have known that potential lenders would rely on the purchase orders in extending financing to Stayhealthy.

134.    ABC and Stayhealthy knew that there was a high probability that a potential lender's rights could be injured by relying on purchase orders that misrepresented the terms of the transaction between ABC and Stayhealthy.

135.    Notwithstanding such knowledge, ABC and Stayhealthy deliberately proceeded to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others, including Petters Company, by creating and disseminating the First Purchase

Order and the Second Purchase Order, without indicating that the "sales" described in such purchase orders were not true sales, but were actually consignments.

136.    Notwithstanding such knowledge, ABC and Stayhealthy also deliberately proceeded to act with indifference to the high probability of injury to the rights or safety of others, including Petters Company, by creating and disseminating the First Purchase Order and the Second Purchase Order, without indicating that the "sales" described in such purchase orders were not true sales, but were actually consignments.

137.    ABC and Stayhealthy acted in deliberate disregard for the rights of others, including Petters Company, within the meaning of Minn. Stat. § 549.20(1)(a), thereby permitting Petters Company to assert a claim for punitive damages.

138.    As a result of ABC and Stayhealthy's actions, Petters has been damaged in an amount to be determined at trial.

**WHEREFORE**, Petters Company respectfully requests that the Court award it the following relief:

A.    On Counts I, III, V, and VI, that the Court enter judgment in favor of Plaintiff and against Stayhealthy in the amount in excess of $7,000,000 (plus interest, costs, and attorneys' fees), which amount shall be determined at trial;

B.    On Counts II, IV and VII, that the Court award plaintiff possession and control of the Loan One Collateral, Loan Two Collateral and Loan Three Collateral;

C.    On Counts VIII and IX that the Court enter judgment in favor of Plaintiff and against AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, AmerisourceBergen Services Corporation, and Bergen Brunswig Drug Company, jointly and severally, in an amount to be determined at trial.

D.    On Counts X and XIII, that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in an amount in excess of $7,000,000, which amount shall be determined at trial;

E.    On Counts XI and XII, that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in an amount in excess of $7,000,000, which amount shall be determined at trial, and that said amount be trebled, and that Plaintiff be awarded its costs, disbursements and attorneys' fees pursuant to 18 U.S.C. § 1964(c);

F.    On Count XIV, that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial in accordance with Minnesota law; and

G.    Awarding such other and further relief as the Court deems just and equitable.


Dated: February 6, 2004

David R. Marshall (#184457)
Crystal M. Ovsak (#030492X)
FREDRIKSON & BYRON, P.A.
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402
Telephone:    612/492-7154/7192
Fax:             612/492-7077
ATTORNEYS FOR PLAINTIFF


#2891756\1

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

---

Petters Company, Inc.,

       Plaintiff,

vs.

Stayhealthly, Inc.,
AmerisourceBergen Corporation,
AmerisourceBergen Drug Corporation,
AmerisourceBergen Services Corporation, and
Bergen Brunswig Drug Company,

       Defendants.

**Court File No. 03-3210 JRT/FLN**

**DEFENDANT STAYHEALTHY, INC.'S**
**INITIAL DISCLOSURES**

---

       Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Stayhealthy, Inc.

("Stayhealthy") hereby provides the following disclosures:

      (A)    the name and, if known, the address and telephone number of each individual
likely to have discoverable information that the disclosing party may use to
support its claim or defenses, unless solely for impeachment, identifying the
subjects of the information;

      Stayhealthy identifies the following individuals:

      1.     John Collins
           **Stayhealthy, Inc.**
           c/o Skolnick & Associates, P.A.
           2100 Rand Tower
           527 Marquette Avenue South
           Minneapolis, Minnesota 55402

           Mr. Collins has knowledge concerning virtually every aspect of the
           Stayhealthy Program, the Stayhealthy Kiosks, meetings and
           correspondence with ABC and the other participants in the Stayhealthy
           Program.

      2.     Bernard Hicks
           **Stayhealthy, Inc.**

AUG  4 2003

c/o Skolnick & Associates, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, Minnesota 55402

Mr. Hicks has knowledge concerning the Stayhealthy Program, the
Stayhealthy Kiosks, meetings and correspondence with ABC and the other
participants in the Stayhealthy Program.

3.     Duff Brace
       **Stayhealthy, Inc.**
       c/o Skolnick & Associates, P.A.
       2100 Rand Tower
       527 Marquette Avenue South
       Minneapolis, Minnesota 55402

Mr. Brace has knowledge concerning the Stayhealthy Program, the
Stayhealthy Kiosks, meetings and correspondence with ABC and the other
participants in the Stayhealthy Program.

4.     Tom Chamberlain
       **Stayhealthy, Inc. (Center for Health Information)**
       c/o Skolnick & Associates, P.A.
       2100 Rand Tower
       527 Marquette Avenue South
       Minneapolis, Minnesota 55402

Mr. Chamberlain has knowledge concerning the Stayhealthy Program, the
Stayhealthy Kiosks, meetings and correspondence with ABC and the other
participants in the Stayhealthy Program.

5.     David Gencarelli, lobbyist
       410 – 3rd Street S.E., #2
       Washington, D.C. 20003

Mr. Gencarelli made the arrangements with the Health and Human
Services Secretary Tommy Thompson.

6.     Dr. Joyce Brothers
       c/o Steven Burn
       10th Floor

630 – 3rd Avenue
New York, NY 10017

Mr. Brothers has knowledge regarding the Stayhealthy Program and her involvement therein.

7.    Tommy Thompson
      Office of Health and Human Services
      Washington, D.C.

      Mr. Thompson has knowledge regarding the Stayhealthy Program and his involvement therein.

8.    Chuck Prieve
      **AmerisourceBergen**

      Mr. Prieve is believed to have knowledge regarding the Stayhealthy Program and the Stayhealthy Kiosks.

9.    Chuck Carpenter
      **AmerisourceBergen**

      Mr. Carpenter is believed to have knowledge regarding the Stayhealthy Program and the Stayhealthy Kiosks.

10.   Fred Stern
      **AmerisourceBergen**

      Mr. Stern is believed to have knowledge regarding the Stayhealthy Program and the Stayhealthy Kiosks.

11.   Mike Viola
      **AmerisourceBergen**

      Mr. Viola did due diligence on Stayhealthy.

12.   Daniel Ramirez
      **AmerisourceBergen**

      Mr. Ramirez has knowledge relating to the discussions, negotiations, and implementation relating to the Stayhealthy Program and the Stayhealthy

Kiosks.

13.    Kurt Hilzinger
       **AmerisourceBergen**

       Mr. Hilzinger is believed to have knowledge regarding the Stayhealthy
       Program and the Stayhealthy Kiosks.

14.    Gary Yoshino
       **AmerisourceBergen**

       Mr. Yoshino has knowledge relating to the discussions, negotiations, and
       implementation relating to the Stayhealthy Program and the Stayhealthy
       Kiosks.

15.    Cindy Graham
       **IBM**
       600 Anton Blvd.
       Costa Mesa, CA 92626

       Ms. Graham has knowledge regarding the Stayhealthy Kiosks.

16.    Laura Robertson
       **IBM**
       600 Anton Blvd.
       Costa Mesa, CA 92626

       Ms. Robertson has knowledge regarding the Stayhealthy Kiosks.

17.    Michael Albarian
       **IBM**
       600 Anton Blvd.
       Costa Mesa, CA 92626

       Mr. Albarian has knowledge regarding the Stayhealthy Kiosks.

18.    3,200 independent Good Neighbor Pharmacies and Family Pharmacies.
       All across the United States.

(B)   a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

Plaintiffs identify the following documents or categories of documents that it presently is aware of:

1.   Correspondence between the parties.

2.   Contracts and draft contracts.

3.   Marketing materials prepared by ABC, Stayhealthy, or both.

4.   Materials prepared for the pharmacies, end users, trainers, etc.

5.   Media materials.

6.   Documents identified in the Complaint and the Answer and Crossclaim.

Many of these documents or copies thereof are either in the possession of Stayhealthy's counsel or can be provided by Stayhealthy upon request.

(C)   a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

Stayhealthy identifies the following at the present time:

| | | |
|---|---|---|
| 1. | Loss from purchase order one: | $2,007,000 |
| 2. | Loss from purchase order two: | $4,535,772 |
| 3. | Loss from the failure to market and promote Stayhealthy Program | Undetermined |
| 4. | Interest owed to Petters | Undetermined |
| 5. | Harm to Stayhealthy's reputation | Undetermined |
| 6. | Loss from the failure to purchase Stayhealthy Kiosks | Undetermined |
| 7. | Loss from the failure to market Stayhealthy Kiosks | Undetermined |

(D)   for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

**SKOLNICK & ASSOCIATES, P.A.**

Date: August 1, 2003

By: _____

William R. Skolnick #132187
Sean Shiff #270519
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402
(612) 677-7600
(612) 677-7601 Fax

**ATTORNEYS FOR
STAYHEALTHY, INC.**

# SKOLNICK & ASSOCIATES, P.A.

ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL, III
SEAN A. SHIFF
MATTHEW J. KADING*

*ALSO LICENSED IN WISCONSIN

August 1, 2003

## VIA FASCIMILE AND U.S. MAIL

Joseph M. Sokolowski, Esq.
**Parsinen Kaplan Rosberg &**
  **Gotlieb, P.A.**
100 South Fifth Street
Suite 1100
Minneapolis, MN 55402

David R. Marshall, Esq.
**Fredrickson & Byron, P.A.**
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402

Re:    Petters Company, Inc. vs. Stayhealthy, Inc., et al.
       **U.S. District Court File No.: 03-03210 JRT/FLN**

Dear Counsel:

Enclosed and hereby served upon you, please find Defendant's Stayhealthy, Inc.'s Initial Disclosures.

Very truly yours,

**SKOLNICK & ASSOCIATES, P.A.**

Sean A. Shiff

SAS:jrn
Enclosures
c:    Mr. John Collins
      Andrew Schiff, Esq. (via facsimile only)
      Scott P. Schomer, Esq.

AUG  4 2003

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
### FOURTH DIVISION

Petters Company, Inc.,

       Plaintiff,

vs.

Stayhealthly, Inc.,
AmerisourceBergen Corporation,
AmerisourceBergen Drug Corporation,
AmerisourceBergen Services Corporation, and
Bergen Brunswig Drug Company,

       Defendants.

**Court File No. 03-3210 JRT/FLN**

**DEFENDANT STAYHEALTHY, INC.'S
ANSWERS TO PETTERS'
INTERROGATORIES SET I**

TO:    PLAINTIFF AND ITS ATTORNEY, DAVID MARSHALL, ESQ., 4000 PILLSBURY
CENTER, 200 SOUTH SIXTH STREET, MINNEAPOLIS, MINNESOTA, 55402-1425

Defendant Stayhealthy, Inc. submits the following Answers to Plaintiff's Interrogatories.

## GENERAL OBJECTIONS

A.    Defendant responds to Plaintiff's Interrogatories only as specifically provided in Rules 26 and 33 of the Minnesota Rules of Civil Procedure. To the extent Plaintiff seeks to impose upon Defendant any requirement to respond in any other manner, Defendant objects to the Interrogatories as being outside the scope of the Minnesota Rules.

B.    Defendant objects to the Interrogatories to the extent they seek legal opinions and conclusions.

C.    Defendant objects to the Interrogatories to the extent they seek information protected from discovery because of the attorney-client privilege or the work product doctrine.

D.    Defendant objects to the Interrogatories to the extent they seek information, which is overly burdensome and better obtained by way of depositions.

To the extent that Defendant responds to the Interrogatories, it does so subject to the foregoing objections and without waiving them. The foregoing objections and limitations are included in each of the following Responses, regardless of whether they are repeated below.

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify all individuals who supplied information used to answer these interrogatories.

**ANSWER:**    John Collins, Duff Brace, and Bernard Hicks.

**INTERROGATORY NO. 2:**  Describe all agreements entered into at any time between you and ABC, including without limitation the agreement regarding the purchase and sale of the goods identified in Exhibits A and E of Petters Company's Complaint.

**ANSWER:**    Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Stayhealthy will produce business records, which incorporate the agreements between it and ABC. See also Stayhealthy's Answer and Crossclaim.

**INTERROGATORY NO. 3:**  Identify each person involved in negotiating the agreements referred to in your answer to Interrogatory 2.

**ANSWER:**    John Collins, Duff Brace, Bernard Hicks, Dan Ramirez, Gary Yoshino Chuck Prieve Aileen Gould.

**INTERROGATORY NO. 4:**   Identify every representative of Stayhealthy who communicated with ABC with respect to the purchase, sale, marketing, or promotion of the goods identified in Exhibits A and E to Petters Company's Complaint and describe each person's role in the transaction(s).

**ANSWER:**    John Collins, Duff Brace, Bernard Hicks and others who are identified in the various emails and other correspondence that Stayhealthy is producing. Each of these individuals was involved in frequent discussions and email correspondence with ABC and other third parties concerning the many aspects and phases of the Stayhealthy program. See the documents produced Stayhealthy.

**INTERROGATORY NO. 5:**   Identify every representative of ABC who communicated with Stayhealthy with respect to the purchase, sale, marketing, or promotion of the goods identified in Exhibits A and E to Petters Company's complaint and describe each person's role in the transaction(s).

**ANSWER:**  Dan Ramirez was the main ABC contact. Gary Yoshino, assistant to Ramirez, was the main individual involved from ABC on a day-to-day basis. David Wright was in charge of GNP store

2

programs. Chuck Prieve was initially in the same position as Dan Ramirez. Chuck Carpenter, President of Pharmerica, an ABC subsidiary. Mike Viola and David Senior. Jack Quinn, ABC Treasurer, involvement regarding financial arrangements. Fred Stern was involved regarding financial arrangements. Doug Batezel, in procurement, was involved regarding financial arrangements. Sherry Huey assistant to Dan Ramirez. David Collum, ABC sales representative for Longs Pharmacy, Barbara Brungess and Michael Kilpatric were involved regarding Public Relations. Heather Laird and Elaine Stephenson were involved regarding the list of GNP and Family Pharmacies being shipped product. Dan Steiber was involved in advertising and kiosks. Mindy Riebe was involved with kiosk special programs. Dave Yost, CEO of ABC, spoke to Stayhealthy's lobbyist, David Gencarelli. Victor Lozano, salesman, was involved regarding the Stayhealthy program.

**INTERROGATORY NO. 6:**  Under your agreement with ABC regarding the purchase and sale of the goods identified in Exhibits A and E to Petters Company's Complaint, describe ABC's obligations to purchase, sell, market, and/or promote the goods.

**ANSWER:** Under the agreement, ABC was to ship the goods to the Pharmacies that would accept auto shipments after approval of the group leaders. The stores receiving the goods would be billed under 30 day terms and would pay ABC for the goods. ABC would immediately pay Stayhealthy. The stores would keep the goods for a minimum period of 6 months during which time ABC's sales, marketing, and promotional force would be engaged, the media exposure would be generated, and AFAA trainers would visit the stores to run fat testing and fitness screening days. After 6 months, and for a finite period thereafter, any unsold, undamaged goods could be returned to Stayhealthy for a full refund.

The kiosks would be delivered and advertising and promotions would be introduced and overseen by Stayhealthy. Stayhealthy would "up sell" its products on the kiosk and would distribute and sell the kiosk exclusively through ABC. Any shortfall on returns could be recaptured from Kiosk revenue if needed. ABC would get their sales, marketing, and promotion force fully engaged.

Dated:  September 9, 2003

By: _____
    John Collins, CEO of Stayhealthy, Inc.

3

SEP-11-2003  11:14        SKOLNICK & ASSOC                    6126777601    P.06

                                                      TO:16126777601        P:9/9

STATE OF CALIFORNIA                    )

COUNTY OF LOS ANGELES   )              )ss

Subscribed and sworn to before me
this 10TH day of September, 2003.

_Ocie E Henderson_

Notary Public



As to objections:

                                   SKOLNICK & ASSOCIATES, P.A.

Date: September 12, 2003          By: _Sean Shiff_
                                      William R. Skolnick, #154187
                                      Sean Shiff #270519
                                      2100 Rand Tower
                                      527 Marquette Avenue South
                                      Minneapolis, MN 55402
                                      (612) 677-7600

                                   ATTORNEYS FOR
                                   STAYHEALTHY, INC.

4

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Petters Company, Inc., | Court File No. 03-3210 (JRT/FLN) |
| Plaintiff, | |
| vs. | |
| Stayhealthy, Inc., AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, AmerisourceBergen Services Corporation, and Bergen Brunswig Drug Company, | **NOTICE OF TAKING DEPOSITION OF DUFF BRACE** |
| Defendants. | |

PLEASE TAKE NOTICE that the deposition of Duff Brace will be taken before a qualified Notary Public at Hilton Boston Logan Airport, 85 Terminal Road, Boston, Massachusetts, on January 21, 2004, beginning at 9:00 a.m. and thereafter by adjournment until the same shall be completed. The examinations will be recorded by stenographic recording and videotape.

Dated: *Nov. 21* , 2003.

David E. Marshall (#184457)
Gregory E. Karpenko (#0286473)
Crystal M. Ovsak (#030492X)
FREDRIKSON & BYRON, P.A.
4000 Pillsbury Center
200 Sixth Street South
Minneapolis, MN 55402-1425
(612) 492-7000
(612) 492-7077 (Fax)

ATTORNEYS FOR PLAINTIFF

2893054\1

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Petters Company, Inc., | Court File No. 03-3210 (JRT/FLN) |
| Plaintiff, | |
| vs. | |
| Stayhealthy, Inc., AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, AmerisourceBergen Services Corporation, and Bergen Brunswig Drug Company, | **AMENDED NOTICE OF TAKING DEPOSITION OF DUFF BRACE** |
| Defendants. | |

PLEASE TAKE NOTICE that the deposition of Duff Brace will be taken before a qualified Notary Public at Hilton Boston Logan Airport, 85 Terminal Road, Boston, Massachusetts, on April 1, 2004, beginning at 9:00 a.m. and thereafter by adjournment until the same shall be completed. The examinations will be recorded by stenographic recording and videotape.

Dated: _____Jun 38____, 2003.

_____
David R. Marshall (#184457)
Gregory E. Karpenko (#0286473)
Crystal M. Ovsak (#030492X)
FREDRIKSON & BYRON, P.A.
4000 Pillsbury Center
200 Sixth Street South
Minneapolis, MN 55402-1425
(612) 492-7000
(612) 492-7077 (Fax)

ATTORNEYS FOR PLAINTIFF

#2922035\1

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Petters Company, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Stayhealthy, Inc., <br> AmerisourceBergen Corporation, <br> AmerisourceBergen Drug Corporation, <br> AmerisourceBergen Services Corporation, and <br> Bergen Brunswig Drug Company, <br><br> Defendants. | Court File No. 03-3210 (JRT/FLN) <br><br><br><br><br> **AMENDED NOTICE OF** <br> **TAKING DEPOSITION OF** <br> **LISA HOUSE** |

PLEASE TAKE NOTICE that the deposition of Lisa House will be taken before a

qualified Notary Public at Hilton Los Angeles Airport, 5711 West Century, Los Angeles,

California, on February 24, 2004, beginning at 1:00 p.m. and thereafter by adjournment until the

same shall be completed.  The examination will be recorded by stenographic recording and

videotape.

Dated: _Jan 28_ , 2004.

David R. Marshall (#184457)
Gregory E. Karpenko (#0286473)
Crystal M. Ovsak (#030492X)
FREDRIKSON & BYRON, P.A.
4000 Pillsbury Center
200 Sixth Street South
Minneapolis, MN 55402-1425
(612) 492-7000
(612) 492-7077 (Fax)

ATTORNEYS FOR PLAINTIFF

#\2922018\1

Petters Company, Inc. v. Stayhealthy, Inc., et al.
Court File No.: 03-3210 (JRT/FLN)

## <u>AFFIDAVIT OF SERVICE BY FACSIMILE AND U.S. MAIL</u>

STATE OF MINNESOTA    )
                           ) SS.
COUNTY OF HENNEPIN  )

      Debra A. Uhrich, being duly sworn on oath, deposes and states that on the 29 day of January, 2004, she served the attached:

1.      Amended Notice of Taking Deposition of Duff Brace; and
2.      Amended Notice of Taking Deposition Lisa House.

by facsimile and by placing a true and correct copy thereof in an envelope addressed as follows and depositing the same, with postage prepaid, in the United States mail at Minneapolis, Minnesota.

Andrew O. Schiff, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
260 South Broad Street
Philadelphia, PA 19102

Fax:  (215) 568-6603

Robert M. Gardner, Esq.
7301 Ohms Lane, Suite 475
Edina, Minnesota  55439

Fax:  (952) 345-2809

Joseph M. Sokolowski, Esq.
Parsinen Kaplan Rosberg & Gotlieb, P.A.
Suite 1100
100 South Fifth Street
Minneapolis, MN 55402

Fax:  612-333-6798



Debra A. Uhrich

Subscribed and sworn to before me
this **29th** day of January, 2004

_Diane Olson_
Notary Public

DIANE L. OLSON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

#2922080\1

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Petters Company, Inc., | Court File No. 03-3210 (JRT/FLN) |
| Plaintiff, | |
| vs. | |
| Stayhealthy, Inc., AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, AmerisourceBergen Services Corporation, and Bergen Brunswig Drug Company, | **SECOND AMENDED NOTICE OF TAKING DEPOSITION OF DUFF BRACE** |
| Defendants. | |

PLEASE TAKE NOTICE that the deposition of Duff Brace will be taken before a qualified Notary Public at Embassy Suites, Board Room, 207 Porter Street, Boston, Massachusetts 02128, on September 29, 2004, beginning at 9:00 a.m. and thereafter by adjournment until the same shall be completed. The examination will be recorded by stenographic recording and videotape.

Dated: _Aug. 25_, 2004.

David R. Marshall (#184457)
Gregory E. Karpenko (#0286473)
Crystal M. Ovsak (#030492X)
FREDRIKSON & BYRON, P.A.
4000 Pillsbury Center
200 Sixth Street South
Minneapolis, MN 55402-1425
(612) 492-7000
(612) 492-7077 (Fax)

ATTORNEYS FOR PLAINTIFF

#3008542\1

Petters Company, Inc. v. Stayhealthy, Inc., et al.
Court File No.: 03-3210 (JRT/FLN)

## AFFIDAVIT OF SERVICE

STATE OF MINNESOTA    )
                      ) SS.
COUNTY OF HENNEPIN    )

     Debra A. Uhrich, being duly sworn on oath, deposes and states that on the 25th day of August, 2004, she served the attached:

     Second Amended Notice of Taking Deposition of Duff Brace

by placing a true and correct copy thereof in an envelope addressed as follows and depositing the same, with postage prepaid, in the United States mail at Minneapolis, Minnesota.

Eric Macey, Esq.
Novack and Macey, LLP
303 West Madison Street
Chicago, IL 60606

Andrew O. Schiff, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
260 South Broad Street
Philadelphia, PA 19102

Robert M. Gardner, Esq.
Gardner Law Office
P.O. Box 22071
St. Paul, MN 55122-0071

Joseph M. Sokolowski, Esq.
Parsinen Kaplan Rosberg & Gotlieb, P.A.
Suite 1100
100 South Fifth Street
Minneapolis, MN 55402

Scott P. Schomer, Esq.
Borden Law Office
1515 Crenshaw Blvd., Suite 107
Torrance, CA 80501

Steven E. Rau, Esq.
333 South Seventh Street, Suite 2900
Minneapolis, MN 55402

                                    _Debra Uhrich_
                                    Debra A. Uhrich

Subscribed and sworn to before me
this 25th day of August, 2004

_Diane Olson_
Notary Public
#3008544\1

DIANE L. OLSON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005